**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Genesis Equipment & Manufacturing, Inc., a Wisconsin corporation,

Plaintiff,

v.

The Stanley Works, a Connecticut corporation,

Defendant.

Civil No. 02-14 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

David E. Oslund, Esq., and Thomas C. Mahlum, Esq., Robins, Kaplan, Miller & Ciresi LLP, 2800 LaSalle Plaza, 800 LaSalle Avenue, Minneapolis, MN 55402-2015, counsel for Plaintiff.

John B. Gordon, Esq., and Michael Ponto, Esq., Faegre & Benson, LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402-3901, Michael J. Dorney, Esq., and Ronald J. Cohen, Tyler, Cooper & Alcorn, LLP, 205 Church Street, P.O. Box 1936, New Haven, Connecticut, 06509-1910, counsel for Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on July 19, 2002, pursuant to Plaintiff's Motion for Partial Summary Judgment. By its Complaint, Plaintiff, Genesis Equipment & Manufacturing, Inc. ("Genesis") seeks declaratory relief pursuant to 28 U.S.C. § 2201 in the form of a judgment declaring that Genesis is in compliance with Paragraph 6C of the parties' March 1, 1999, Settlement Agreement ("Agreement"). Genesis further requests that the Court grant partial summary judgment on The Stanley Works' ("Stanley") counterclaim for breach of Paragraph 6C of the Agreement. For the reasons set forth below, Plaintiff's motion is granted.

JUL 3 1 2002
FILED________
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD______
DEPUTY CLERK______

**Background**

Genesis is a Wisconsin corporation engaged in the business of the manufacture and sale of mobile industrial shears employed in the demolition and scrap industries. Stanley is a Connecticut corporation engaged in the same business and is a competitor of Genesis.

Genesis and Stanley previously were parties to an action in the United States District Court for the District of Minnesota (Case No. 98-CV-588 JMR/FLN) in which Stanley asserted that Genesis and other defendants misappropriated trade secrets involving the design of Stanley's mobile industrial shears. Stanley also asserted claims for misappropriation of confidential processes and testing, proprietary customer information, copying of new product designs, infringement of a trademark, solicitation of customers, and false and deceptive advertising, among other causes of actions.

On or about March 1, 1999, the parties reached a settlement, and on March 22, 1999, this Court entered an Order dismissing Stanley's claims with prejudice. The terms of the Agreement required Genesis to modify the design of its mobile industrial shears. The controversy at issue in the matter before the Court is whether Genesis is in compliance with the terms of the Agreement.

Specifically, Paragraph 6C of the Agreement stated that Genesis will eliminate the "interference fit" it *currently employed* in the design and manufacture of the main pivot group of the Genesis Shear.[1] The "interference fit" was defined as "*the size of the main shaft being larger*

---

[1] An interference fit is a type of joint between two objects which does not employ any bolts or other types of fasteners. Rather, the joint is formed by inserting the first object through a hole in the second object. In order to form a tight joint, the diameter of the first object must be slightly larger than the diameter of the hole in the second object. After cooling (thus contracting) the first object and heating (thus expanding) the hole in the second object, the first object is then inserted in the hole of the second object. When the objects return to normal temperatures, a solid joint, known as an interference fit, occurs between the objects. *See* Affidavit of Dan Jacobson ¶4.

*than the holes in the upper jaws at the locations where the shaft goes through those holes*" (emphasis added). The Agreement further states that the design of the replacement for the interference fit had not yet been accomplished and Genesis was "free to employ any design they may choose so long as the interference fit as defined herein is eliminated." Genesis was required to employ such a modified design for a three-year period. The term "main shaft" or "shaft" was not defined in the Agreement.

Genesis concedes that they are using an interference fit; however, they maintain that they modified the interference fit as described in the Agreement and thus are in compliance with the Agreement. Genesis redesigned the shear to include a shaft/sleeve assembly versus the main shaft assembly previously used. Per the Agreement, the new main pivot group design uses a main shaft that is smaller in diameter than the upper jaw holes. Genesis modified the design by adding a sleeve that resides between the main shaft and the upper jaw holes. The sleeve increases the diameter of the shaft/sleeve assembly to be larger than the diameter of the upper jaw hole, thus making an interference fit with the upper jaw hole.

Stanley alleges that the original 1998 litigation involved, among other things, Genesis's misappropriation of Stanley's trade secret tolerance and strain gauge testing, and, thus, it was Stanley's understanding and intent that the Agreement precluded Genesis from employing any interference fit which utilized that tolerance and strain gauge testing. Stanley maintains that the shaft/sleeve assembly currently used by Genesis utilizes, as a unit, the trade secret tolerance and strain gauge testing and that the addition of the sleeve renders the main shaft, at the point where it passes through the upper jaw hole, larger than that hole. Accordingly, Stanley maintains that the Agreement should be construed to prohibit Genesis's use of the shaft/sleeve assembly.

By letter dated December 19, 2001, Stanley asserted to Genesis their position that Genesis was not in compliance with the terms of the Agreement requiring the elimination of the interference fit. On December 31, 2001, Genesis responded and asserted that they are not in violation of that provision of the Agreement. On January 2, 2002, Genesis filed the current action before the Court seeking declaratory judgment. On February 19, 2002, Stanley filed counterclaims based, *inter alia*, on its allegations that Genesis has not made the design modifications to its interference fit required by the terms of the Agreement.

The parties agreed that this action should be bifurcated with the liability issue related to the "interference fit" claim to be tried first. Litigation of all other issues is stayed pending the outcome of this claim. Genesis, with this motion, requests that the Court grant partial summary judgment on Stanley's counterclaim regarding the interference fit and Paragraph 6C of the Agreement, and that the Court declare that Genesis has not been and is not in violation of the Agreement provision requiring elimination of the "interference fit" as defined therein.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and

inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record, which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. The Terms of the Settlement Agreement**

As previously stated, the controversy at hand involves a dispute over the terms of the Agreement. Stanley maintains that the Court must look to extrinsic evidence in order to interpret the Agreement. Stanley asserts that the extrinsic evidence supports its position that the Agreement barred the use of *any* interference fit in the design of Genesis's new main pivot group. The Court, however, finds that the terms of the Agreement are clear and unambiguous and therefore will not look to extrinsic evidence in order to interpret the Agreement.

The parol evidence rule excludes evidence offered to vary the terms of certain written contracts. 9 Wigmore Evidence, 3d ed. 1940 §§ 2400-2478. The parol evidence rule bars the admission of pre-agreement evidence when the plain language of the agreement is clear and unambiguous. "[W]here parties have reduced their contract to writing, the contract may not be proved by prior or contemporaneous utterances or writings and [] these are entirely immaterial for the purpose of determining what the terms of the contract are . . . ." *Wessels, Arnold & Henderson v. National Med. Waste, Inc.*, 65 F.3d 1427, 1435 (8th Cir. 1995).

Where the language of a contract is neither ambiguous, incomplete or indefinite, the Court should interpret a settlement agreement in accordance with the plain meaning of the contract's language. *See Wessels*, 65 F.3d at 1436 (citing *Carl Bolander & Sons, Inc. v. United Stockyards Corp.,* 215 N.W.2d 473, 476 (Minn. 1974)). "It is improper to go beyond the actual language of the contract where the wording is clear." *Kauffman Stewart, Inc. v. Weinbrenner Shoe Co., Inc.* 589 N.W.2d 499, 502 (Minn. Ct. App. 1999).

A court cannot add to or alter the terms of a contract under the guise of contract construction. It is not for the "court to create or add exceptions to the contract or to remake it on behalf of either of the contracting parties." *The Telex Corp. v. Data Products Corp.*, 135 N.W.2d 681, 687 (Minn. 1965). A court "cannot add terms to [a] contract by interpretation when the terms set out by the parties are unambiguous." *Burke v. Fine*, 608 N.W.2d 909, 913 (Minn. Ct. App. 2000).

The Court finds that Paragraph 6C of the agreement is unambiguous based on the plain and ordinary meaning of its words. Paragraph 6C simply requires Genesis to abandon the interference fit it was employing at the time of the Agreement. Genesis is free to employ any other design in the manufacture of its new main pivot group. Stanley is asking the Court to add terms to the Agreement that are not a part of it. The Agreement does not prohibit Genesis from using *any* interference fit between the main shaft and the hole in the upper jaw, only that which was employed at the time the Agreement was created.

Stanley maintains that the failure to define the term "main shaft" or "shaft" in the Agreement renders it ambiguous, requiring interpretation. Stanley asserts that the Agreement fails to state specifically whether the main shaft or shaft is exclusive of any sleeve or other component which is combined with the pin to create an interference fit into the holes and that

that omission renders the language ambiguous. The Court disagrees. The term main shaft or shaft has a plain and obvious meaning and that meaning clearly does not encompass a shaft/sleeve assembly. The Agreement does not state that it prohibits the functional equivalent of the interference fit then employed or a substantially similar interference fit involving the main shaft and some additional part. If the parties intended the Agreement to apply to the main shaft and any parts affixed to the main shaft or if the parties intended the prohibition of the use of an interference fit to apply to the entire main pivot group, the Agreement must state so.

Furthermore, the Court cannot eliminate the term "currently employed" from the Agreement. Under Minnesota law, there is a "presumption that the parties intended the language used to have effect." *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 526 (Minn. 1990). "A basic tenet of contract law is that each word in the agreement should be interpreted to have a meaning, rather than to be redundant and superfluous." *Jones v. Sun Carriers, Inc.*, 856 F.2d 1091, 1095 (8th Cir. 1988). Courts must "attempt to avoid an interpretation which would render a provision meaningless." *Chergosky,* 463 N.W.2d at 526. The language "currently employed" means that the only prohibition covered by the Agreement was the interference fit employed at that time. Genesis's current design is not the method that was employed at the time the parties negotiated the Agreement.

The Court notes that all of the terms of the Agreement were fully negotiated and done so at arm's length. A fully negotiated, arm's length transaction between the parties occurred when both parties were represented by counsel and only after lengthy discussions.

Stanley initiated litigation against Genesis in February of 1998. After 13 months of litigation, the parties signed the Agreement in settlement of the litigation in March of 1999. Thus, when the Agreement is viewed in the context of the totality of the circumstances

surrounding the previous litigation and the parties' posture at that time, the Agreement clearly was intended to be the complete integration of the parties' intent and pre-Agreement negotiations. As noted previously, there is nothing ambiguous about any provision of the Agreement, which renders all extrinsic evidence inadmissible.

Having determined that the language of the Agreement is clear, the Court must now determine whether Genesis has complied with the terms of the Agreement by modifying the design of its main pivot group. The Court finds that Genesis has complied with the terms of the Agreement. Per the Agreement, Genesis was free to employ any design in its main pivot group provided it was not the design employed at the time of the Agreement. Genesis abandoned its previous design, the design employed at the time of the Agreement. That design, as described in the Agreement, involved a main shaft which was larger than the size of the holes in the upper jaw. In Genesis's new design the main shaft is smaller than the upper jaw holes. Genesis has added an additional part, the sleeve, which requires additional design, fabrication, assembly and cost, and it is the shaft/sleeve assembly which has a larger diameter than the upper jaw holes.

Finally, Stanley asserted in its brief that, under Fed. R. Civ. P. 56(f), Genesis's motion for summary judgment was premature. Fed. R. Civ. P. 56(f) allows the Court to "refuse the application for judgment" or delay consideration of it until the completion of appropriate depositions and discovery. A continuance should be granted where a party has been unable to "present by affidavit facts essential to justify the party's opposition." Fed. R. Civ. P. 56 (f). At this point, discovery has not been closed. The dispositive motion deadline is October 1, 2002. Stanley claims that depositions bearing on the facts relevant to phase one of this case have yet to be completed. Genesis has not produced any documents in response to Stanley's first request for production of documents. However, Stanley fails to set forth essential facts to be attained

through additional discovery that could affect the outcome of this motion. Furthermore, Stanley is in possession of all essential facts to this dispute. Stanley possesses all of the engineering designs of Genesis's shears. Stanley has knowledge of Genesis's design of the main shaft, the sleeve, and the hole in the upper jaw of the Genesis shears.

In sum, the Court finds the motion is timely; the Agreement is clear; and Genesis has not violated its terms.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Genesis's Motion for Partial Summary Judgment and Declaratory Judgment (Doc. No. 13) is **GRANTED**.

2. Defendant The Stanley Works' Counterclaim, to the extent it relates to Paragraph 6C of the Agreement, is **DISMISSED WITH PREJUDICE**.

Dated: July 31, 2002

DONOVAN W. FRANK
Judge of United States District Court